**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| **Ronald Harris,** | ) | **CASE NO. 1:14 CV 1502** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **Robert Langley, et al.,** | ) | <u>**Memoradum of Opinion and Order**</u> |
| | ) | |
| **Defendant.** | ) | |

<u>**Introduction**</u>

This matter is before the Court upon Defendants Robert Langley, Dominik Pendelton, Patrick Petranek, Chief Calvin Williams, and City of Cleveland's Motion for Summary Judgment (Doc. 28).  This case alleges excessive force against plaintiff by Cleveland police officers. For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

<u>**Facts**</u>

Plaintiff Ronald Harris filed this Complaint against defendants Robert Langley (police officer), Dominic Pendleton (police officer), Patrick Petranek (police officer), Cleveland Police

1

Department[1], Calvin Williams (Chief of Police), and City of Cleveland. The Complaint contains no individual counts, but alleges "federal theories of recovery" and "state law theories of recovery."  The federal theories allege a deprivation of the following constitutional rights: First Amendment (freedom of expression), Fourth Amendment (unlawful seizure), Fifth and Fourteenth Amendments (due process, excessive force, and race discrimination), and Eighth Amendment (cruel and unusual punishment). The state law theories include false arrest and imprisonment, assault and battery, malicious prosecution, abuse of process, negligence, and gross negligence. Additionally, under plaintiff's "factual allegations" section, plaintiff refers to the City's liability for failure to train as well as supervisory liability.

The claims arise out of an incident occurring on July 19, 2013.  The following are plaintiff's version of the facts and defendants' version of the facts.

Plaintiff testified at deposition to the following. Plaintiff, who is 67 years old, called 9-1-1 on the evening of July 19 and reported that he wanted to have his mother, age 86, evaluated for "mental status changes" by a health care professional.  Plaintiff states that he told the dispatcher he wanted EMS to respond, but plaintiff acknowledges that the 9-1-1 tape (played at plaintiff's deposition) did not mention the word EMS and that the dispatcher stated she was sending the police. The police responded to plaintiff's house.  At the time, plaintiff's daughter was at the home as well and observed the incident.[2]  When an officer came to plaintiff's door, plaintiff told him that he had asked for EMS. Plaintiff invited the officer inside. The officer declined, saying

---

[1]    This defendant has been previously dismissed.

[2]    Plaintiff does not submit her affidavit or testimony.  In fact, plaintiff's brief does not mention that his daughter was present.

that it was too hot. A second officer was also there and declined as well. Plaintiff pulled the door closed.  Plaintiff had his back to the door and was reaching for his keys in order to lock the door. The officer to whom plaintiff had been talking then opened the door, body-slammed plaintiff, and knocked him to the floor on his back. Plaintiff's head hit the wall which caused him to be "stunned."  When plaintiff "came around," the officer was handcuffing him.  The officer had his left knee on plaintiff's left knee.  Plaintiff asked the officer why he was being handcuffed and he was told it was because he called the officer a motherfucker.  Plaintiff denied saying that or using any other vulgar language or aggressive behavior toward the officer. The second officer then came inside and said that he was going to call a supervisor. A supervisor subsequently arrived and "shoved" a form at plaintiff and left.  Plaintiff submitted the form later.  After the police departed, plaintiff placed a second call to 9-1-1.  Plaintiff made the second 9-1-1 call because he "wanted someone to come out and see my mother."

Officer Pendleton testified at deposition to the following. He received a call from dispatch to conduct a welfare check on an elderly female.  Dispatch gave him plaintiff's name and address. Upon arriving, the officers knocked on the door of the house.  Plaintiff came to the door and was asked to step outside to speak with the officers.  It was hot, and would have been hot in the house.  Plaintiff said that he did not want to talk outside and told them to come inside. Pendleton walked inside and asked plaintiff what was going on. Officer Pendleton was accompanied by Officer Langley, who did not come inside. Plaintiff said that he wanted EMS, not the police. Officer Pendleton stated that he wanted to speak with plaintiff's mother. Upon doing so, she stated that she was feeling well, did not need an ambulance, and did not need to go to the hospital. Officer Pendleton observed her to be in good condition. When Officer Pendleton

3

reported that plaintiff's  mother was not going to the hospital, plaintiff said that his mother "needed to go" and called Officer Pendleton a "motherfucker" and made offensive or threatening hand gestures to his face.  Officer Pendleton was attempting to leave the house because "it's the end of the run" as plaintiff continued yelling and gesturing at him.  Plaintiff then hit or poked the officer in the plate of his vest, continuing to swear. Officer Pendleton grabbed plaintiff's hand, turned him around, handcuffed him while plaintiff remained standing, and told him to calm down.  After a couple minutes, Officer Pendleton uncuffed plaintiff because he had calmed down and Officer Pendleton exited the house.  Sergeant Petranek then arrived while the officers were outside.

Sergeant Petranek testified at deposition to the following.  He supervises Officers Pendleton and Langley.  On the subject evening, he responded to the officers' request to respond to the location.  Upon arrival, he spoke with Officers Pendleton and Langley who informed him that a male was in the house "who was being obstructive and obstinate."  Sergeant Petranek entered the house and spoke with plaintiff. Plaintiff was irate and insisted that his mother be removed from the house. Sergeant Petranek spoke with plaintiff's mother who was "completely calm" and said that plaintiff would calm down.   Sergeant Petranek also spoke to plaintiff's daughter, who appeared to be in her twenties.  She indicated, "I got this. It won't be a problem. He does this often. He'll calm down."  Plaintiff continued to scream at Sergeant Petranek and tell him he was not doing his job.  Plaintiff told Petranek that he wanted to make a complaint because Petranek was not doing his job. Sergeant Petranek gave plaintiff a complaint form. Plaintiff did not claim to Sergeant Petranek that there had been any use of force or any inappropriate behavior. He never told Petranek that anybody assaulted him or put their hands on

4

him.

Plaintiff sought medical treatment at the Veterans Administration Emergency Room on July 20.  He reported that he had been assaulted by the police and complained of back and wrist pain.  An x-ray of his back showed no fracture.  His wrists showed bruising.  (Doc. 30 Ex. A)

This matter is now before the Court upon Defendants Robert Langley, Dominik Pendelton, Patrick Petranek, Chief Calvin Williams, and City of Cleveland's Motion for Summary Judgment.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).  A fact is "material only if its resolution will affect the outcome of the lawsuit."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts."  *Moore v. Philip Morris Cos., Inc*., 8 F.3d 335, 340 (6th Cir.1993).  The nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by

a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citation omitted).

**<u>Discussion</u>**

While the Complaint alleged violations of plaintiff's First (freedom of expression), Fourth (unlawful seizure), Fifth and Fourteenth (due process, excessive force, and race discrimination), and Eighth (cruel and unusual punishment) Amendment rights, it is clear from plaintiff's brief that he is only pursuing his claims for excessive force and unlawful arrest. Plaintiff also addresses supervisory liability and the liability of the City of Cleveland. Additionally, plaintiff does not specifically address the state law claims.[3]  Furthermore, as

---

[3]    Defendants move for summary judgment "as to all of plaintiff's federal and state law claims." Plaintiff's one paragraph response addressing the state law claims refers only to the excessive force and unlawful arrest.  Therefore, the Court assumes plaintiff has abandoned his remaining state law claims of malicious prosecution, abuse of process, negligence, or gross negligence.

6

defendants point out, and plaintiff does not dispute, only defendant Pendleton is claimed to have used any force against plaintiff.

Accordingly, the remaining claims are: the federal and state claims for excessive force and unlawful seizure by Officer Pendleton and claims for supervisory liability and the liability of the City of Cleveland.

### (1) Federal claims

Section 1983 provides a cause of action to those deprived of a constitutional right by law enforcement officers acting under the color of state law. *Gardenhire v. Schubert*, 205 F.3d 303, 310 (6th Cir.2000).

#### (a) Excessive force

Using excessive force during an arrest or seizure is unreasonable and violates the Fourth Amendment. *Rudlaff v. Gillispie*, --- F.3d ----, 2015 WL 3981335 (6th Cir. July 1, 2015). While plaintiff did not allege an excessive force claim under the Fourth Amendment, the prohibition applies to cities and their officers through the Fourteenth Amendment in suits brought under 42 U.S.C. § 1983. *Standifer v. Lacon,* 587 Fed.Appx. 919 (6th Cir. 2014).  Eighth Amendment excessive force or cruel and unusual claims only apply to prisoners.  *See Cordell v. McKinney*, 759 F.3d 573 (6th Cir. 2014).

Defendant Pendleton raises the defense of qualified immunity.  "Under that doctrine, government officials, including police officers, are immune from civil liability unless, in the course of performing their discretionary functions, they violate the plaintiff's clearly established constitutional rights." *Schreiber v. Moe*, 596 F.3d 323 (6th Cir. 2010) (citing *Jones v. Byrnes*, 585 F.3d 971, 974 (6th Cir.2009)).  Thus, in determining the applicability of qualified immunity, a

7

court first asks whether the officer's conduct violated a constitutional right.  If no constitutional violation is found, "the inquiry stops, the § 1983 claim fails as a matter of law, and the officers do not need qualified immunity."  *Williams v. Sandel*, 2011 WL 2790474 (6th Cir. July 13, 2011) (citations omitted).  If a potential constitutional violation is found, the court asks "whether the right was clearly established in light of the specific circumstances of the case."  *Id.*

      This Court, then, must determine whether a constitutional violation occurred.  The Fourth Amendment prohibits the use of excessive force by arresting officers. *Meirthew v. Amore*, 417 Fed.Appx. 494 (6th Cir. 2011) (citations omitted). The Sixth Circuit has summarized the contours of a Fourth Amendment excessive force claim:

> 'A claim of excessive force under the Fourth Amendment requires that a plaintiff demonstrate that a seizure occurred, and that the force used in effecting the seizure was objectively unreasonable.' *Rodriguez v. Passinault*, 637 F.3d 675, 680 (6th Cir.2011). Whether a constitutional violation based on excessive force occurred 'depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight.' *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir.2007) (citing *Graham v. Connor*, 490 U.S. 386, 395–96 (1989)). In making its determination, the Court should 'pay particular attention to 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.' ' *Schreiber v. Moe*, 596 F.3d 323, 332 (6th Cir.2010) (citing *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir.2001)). This is not an 'exhaustive list,' and the inquiry ultimately turns on whether the seizure was reasonable under the 'totality of the circumstances.' *Slusher v. Carson*, 540 F.3d 449, 455 (6th Cir. 2008).

*Bozung v. Rawson*, 2011 WL 4634215 (6th Cir. Oct. 7, 2011).  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. O'Connor*, 490 U.S. 386, 396–97 (1989).

      Additionally, although this Court evaluates the decision to use force "from the

8

perspective of an objective officer, the facts must still be viewed in a light most favorable to the plaintiff." *Id*. (citing *Slusher v. Carson*, 540 F.3d 449, 455 (6th Cir. 2008)).

Defendants assert that Officer Pendleton's conduct, even if plaintiff's version was true, was reasonable given that plaintiff was attempting to lock him out of the home as he was attempting to conduct a welfare check on an elderly woman. Defendants maintain that given the underlying safety concerns that plaintiff may have obtained a weapon and posed a threat to his mother or to the officers, Pendleton's conduct was objectively reasonable in securing the scene. It was reasonable, defendants assert, that Pendleton employ a takedown maneuver and a leverage technique to handcuff plaintiff while he was obstructing the welfare check. Defendants point out that plaintiff's own evidence shows *de minimus* injury.

Plaintiff's version of the facts leaves this Court no choice but to deny defendants' motion. When a defendant moves for summary judgment based on qualified immunity, the court must look to the plaintiff's version of the facts, draw all reasonable inferences in the plaintiff's favor, and decide whether there is sufficient evidence on the record by which a rational jury might find in the plaintiff's favor. *See Younes v. Pellerito*, 739 F.3d 885 (6th Cir. 2014). According to plaintiff's testimony, after the officer declined to come into the house, plaintiff pulled the door shut. Plaintiff had his back to the door when the officer opened the door, body-slammed plaintiff, and knocked him to the floor on his back. Plaintiff hit his head on the wall and while "stunned," the officer began to handcuff him. The officer used his left knee to restrain plaintiff while handcuffing him.

This Court has to accept plaintiff's version and may not weigh the different versions. "This Court makes no credibility determinations on a motion for summary judgment and takes

9

the evidence in light most favorable to the plaintiff." *Atkins v. Township of Flint,* 94 Fed.Appx. 342 (6th Cir. 2004) (citing *Bass v. Robinson*, 167 F.3d 1041 (6th Cir.1999) (reversing the district court's grant of summary judgment on defendant police officer's qualified immunity defense where the plaintiff's verison of the material events differed from the defendant's version and where the plaintiff's version, if accepted, supported a claim for excessive force).  Because plaintiff's version would support a claim for excessive force, summary judgment on qualified immunity is not warranted.

The Court finds an issue of fact as to excessive force.

### (b) Unlawful seizure

Plaintiff does not dispute Officer Pendleton's testimony that plaintiff was handcuffed for about two minutes while he calmed down. Neither party addresses whether this constitutes a seizure.  The Court assumes that it was.  "The question whether a seizure has occurred within the meaning of the Fourth Amendment is an objective one." *Peete v. Metropolitan Government of Nashville and Davidson County,* 486 F.3d 217 (6th Cir. 2007) (*Brigham City, Utah v. Stuart,* 547 U.S. 398 (2006)). "The various definitions of "seizure" contained in the precedents connote an intentional interference with a person's liberty by physical force or a show of authority that would cause a reasonable person consciously to submit."  *Id.* (citations omitted) and *United States v. Jacobsen*, 466 U.S. 109, 114 n. 5 (1984) (referencing the Court's "oft-repeated definition of the 'seizure' of a person within the meaning of the Fourth Amendment-meaningful interference, however brief, with an individual's freedom of movement").

Officer Pendleton's version easily supports the lawful brief detention of plaintiff while he calmed down, especially given that plaintiff was yelling and gesturing at the officer and

ultimately touched or poked him.  However, plaintiff's version is that he was handcuffed for no

reason while laying "stunned on his back." Plaintiff denied calling Pendleton a motherfucker or

using any other vulgar language or aggressive behavior toward the officer. Thus, accepting

plaintiff's version as true, there is an issue of fact as to unlawful seizure.

### (c) Supervisory liability

Plaintiff asserts that Sergeant Petranek and Chief Williams are liable as supervisors

because Petranek did not investigate plaintiff's complaint form although Petranek states he did

not see the form until after the lawsuit was filed.[4]  Nor did he have knowledge of plaintiff's

second 9-1-1 call. Plaintiff contends that is all indicative of a lax atmosphere.  Plaintiff submits a

December 2014 United States Department of Justice report regarding the Cleveland Police

Department and excessive force. (Doc. 30 Ex. B)

Summary judgment is warranted on plaintiff's claims of supervisory liability. The Sixth

Circuit has held that *respondent superior* is not a proper basis for liability under Section 1983:

> § 1983 liability must be based on more than *respondeat superior*, or the right to control
> employees. Thus, a supervisory official's failure to supervise, control or train the
> offending individual is not actionable unless the supervisor either encouraged the specific
> incident of misconduct or in some other way directly participated in it. At a minimum a
> plaintiff must show that the official at least implicitly authorized, approved, or knowingly
> acquiesced in the unconstitutional conduct of the offending officers.

*Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999) (internal quotation marks and citation

omitted).

Plaintiff presents no evidence that Sergeant Petranek or Chief Williams directly

participated in the incident at issue. Furthermore, there is no evidence that Sergeant Petranek

---

[4]    The Court does not have the complaint form.

11

received a complaint for excessive force and failed to investigate it. Nor can plaintiff support a claim for supervisory liability based on the Department of Justice report.

### (d) City of Cleveland

Plaintiff asserts that the City of Cleveland is liable for the failure to train Officer Pendleton on the use of force and to properly supervise him.  Plaintiff points to Officer Pendleton's testimony wherein he could not summarize the City's use of force policy. Additionally, plaintiff asserts that the United States Department of Justice has found the failure to train to be a pattern and practice of the Cleveland Police Department.

To succeed on a failure to train or supervise claim, the plaintiff must prove that (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury. *Ellis ex rel. Pendergrass v. Cleveland Mun. School Dist*. 455 F.3d 690 (6th Cir. 2006) (citations omitted).  The Sixth Circuit has identified two situations justifying a conclusion of deliberate indifference in claims of failure to train or supervise: 1) failure to provide adequate training in light of foreseeable consequences that could result from a lack of instruction and 2) failure to act in response to repeated complaints of constitutional violations by its officers. *Id.*

In the absence of any evidence supporting a claim against the City, plaintiff cannot rely on the Department of Justice report as general support for a failure to train claim. Nor is Officer Pendleton's testimony that he could not summarize the use of force policy sufficient to sustain a failure to train claim.

### (2) State law claims

12

**(a) assault and battery**

Defendants argue that they are immune from liability on the assault and battery claim under Ohio Revised Code § 2744.03(A)(6) which provides statutory immunity to police officers unless they are shown to have acted outside the scope of their employment or official responsibilities or "with malicious purpose, in bad faith, or in a wanton or reckless manner." Defendants contend that because Pendleton did not use excessive force, this claim fails as well.

Plaintiff's only response is that "the record, if viewed favorably towards the plaintiff indicates both the detention and physical violence required to sustain all the State law claims." (Doc. 30 at 11)

This issue may be addressed by the Court "through the lens of the federal qualified immunity analysis." *Chappell v. City of Cleveland,* 585 F.3d 901 (6th Cir. 2009).  Therefore, summary judgment is denied as to this claim for the same reasons stated above with regard to the excessive force claim.

**(b) false arrest and imprisonment**

Summary judgment is denied as to this claim for the same reasons stated above.

**<u>Conclusion</u>**

For the reasons set forth above, Defendants Robert Langley, Dominik Pendelton, Patrick Petranek, Chief Calvin Williams, and City of Cleveland's Motion for Summary Judgment is granted except as to the claims for excessive force, unlawful seizure, assault and battery, and false arrest and imprisonment against Officer Pendleton.

IT IS SO ORDERED.


           /s/ Patricia A. Gaughan          
PATRICIA A. GAUGHAN
United States District Judge

Dated: 8/3/15

14